Hayden *v.* Crane.

---

CHARLES J. HAYDEN and WILLIAM C. BUSH, Respondents, *v.* CARSO CRANE and SAMUEL E. NORTON, Appellants.

(GENERAL TERM, SEVENTH DISTRICT, SEPTEMBER, 1869.)

R, doing business as a retail dealer in furniture, obtained from C a writing addressed to the plaintiff, who was a wholesale dealer in the same line, as follows: " There is a fair prospect that R could sell a few chamber suits, if he had them. If you let him have them, we will see that you receive pay for them as sold, or soon thereafter." In an action to recover the price of articles sold by plaintiff to R, on the faith thereof—*Held*, the guaranty contemplated but a single sale, and that, accompanied or speedily followed by delivery; that it did not intend a continuing order for future delivery of goods from time to time for an indefinite period.

And, it seems, to construe such writing as covering such a continuing order, would give it the effect of a continuing guaranty.

*Held*, further, that an action upon the guaranty could not be maintained, for miscellaneous articles, constituent parts of " chamber suits," but out of which it did not appear that any such suit, as understood by the parties, could have been made; and although a custom of which R had

Hayden *v.* Crane.

knowlege was shown, for the wholesale trade to sell retail dealers such separate articles, with a view to their arrangement afterward into such suits.

The rule of interpretation applicable to contracts of suretyship restated and applied.

THE complaint demanded a recovery for furniture sold to one Richards, by the plaintiff, Hayden (who had assigned to Bush an interest in the claim), on the credit of the defendant's guaranty of payment. The action was referred, and the plain tiff gave, in evidence on the trial, a bill of the articles, as follows :

CURTIS H. RICHARDS, OF PHELPS, N. Y.,

CRANE & NORTON, Surety.          In account with C. J. HAYDEN, *Dr.*

1866.

| | | |
|---|---|---:|
| Dec. 27, To 1 im. oak bedstead | | $10 00 |
| 1 " " bureau | | 10 00 |
| 1 " " glass | | 4 00 |
| 1 " " sink | | 8 00 |
| 1 " " round stand | | 3 00 |
| 1 " " towel rack | | 1 00 |
| 3 " " chairs | | 4 00 |
| 1 " " sink washstand | | 7 00 |
| 3 plain top oak Grecian chairs | | 4 50 |
| 1 oak round stand | | 4 00 |
| 1 " towel rack | | 1 00 |
| 1 " 3-dr. bureau | | 9 00 |
| 1 " 14 x 24 glass | | 7 50 |
| 1 walt. sink | | 7 00 |
| 1 " 5 dr. proj. bureau | | 16 00 |
| 1 " best dk. " | | 16 00 |
| 1 " 3 dr. proj. " | | 9 50 |
| 1 " proj. dk. " | | 11 00 |
| 12 sett bed castors | | 2 25 |
| 1 round cor. bedstead | | 7 00 |
| 1 cane bk. Victoria rocker | | 6 00 |
| 1867. | | —— $147 75 |
| Jan. 7, 1 walt. bedstead | $16 00 | |
| 1 " " | 16 00 | |
| 1866. | | —— 32 00 |
| Dec. 29, 1 cane bk. walt. nurse | $3 75 | |
| 1 " " " " pl | 3 00 | |
| | | —— 6 75 |
| Carried forward | | $186 50 |

Hayden *v.* Crane.

|  |  |  |  |
|---|---|---|---|
| Brought forward........................................ | | | $186 50 |
| **1867.** | | | |
| Jan. 17, | 1 walt. com. dk. bureau ..................... | $9 50 | |
| | 1 mhg. " " " ..................... | 9 50 | |
| | 1 walt. proj. " " ..................... | 11 00 | |
| | | | 30 00 |
| Feb. 8, | 1 14 x 24 walt. glass...................... | $7 50 | |
| 22, | 1 mhg. proj. bureau ........................ | 11 00 | |
| | | | 18 50 |
| **1867.** | | | |
| March 9, | 2 round cor. bedsteads..................... | $14 00 | |
| | 2 com. cottage " ..................... | 9 00 | |
| | 2 high head " ..................... | 10 00 | |
| | 2 Congress " ..................... | 11 00 | |
| | 2 com. washstands ........................ | 3 00 | |
| | 2 large " ..................... | 3 50 | |
| | 1 carved top walt. nurse .................... | 3 75 | |
| | 1 " " mgh. " .................... | 3 25 | |
| | 1 walt. 3 dr. bureau ........................ | 7 00 | |
| | 1 mgh. " " " ................... | 7 00 | |
| | 12 sett bed castors.......................... | 2 25 | |
| | | | 73 75 |
| 23, | 1 walt. com. dk. bureau..................... | $9 50 | |
| | 1 mhg. " " " ..................... | 9 50 | |
| | | | 19 00 |
| April 4, | 2 large washstands ........................ | $4 00 | |
| | 2 small " ................... | 3 00 | |
| | 1 cane bk. walt. nurse .............. ..... | 3 75 | |
| | 1 brace arm " " ... ................. | 4 50 | |
| | | | 15 25 |
| 20, | 4 com. washstands dk...................... | $6 00 | |
| | 2 " " lt...................... | 3 00 | |
| | 1 walt. bureau washstand................... | 7 50 | |
| | 1 mhg. " " ................... | 7 50 | |
| | 2 walt. braced arm rocker.................. | 9 00 | |
| | 2 high hd. cottage bedsteads............... | 10 00 | |
| | 2 Congress " " .............. | 11 00 | |
| | 1 round cor. " " ............... | 16 00 | |
| | 1 walt. " " carved......... | 16 00 | |
| | 2 Tucker spring beds...................... | 11 00 | |
| | | | 87 50 |
| June 22, | 1 walt. 12 x 20 glass.............................. | | 5 00 |
| | | | $435 50 |

The first seven articles on this bill were charged on a bill of particulars rendered to the defendants in the suit, as " 1 im. oak chamber suit, $40."

The facts, as they appeared on the trial, and were found by the referee, are stated in the opinion of the court.

*D. Stephenson & Warren T. Worden,* for the appellant

*J. H. Martindale,* for the respondent.

Present—E. D. SMITH, JOHNSON and J. C. SMITH, JJ.

By the Court—JAMES C. SMITH, J.    Appeal from a judgment on the report of a referee.    The plaintiffs sued on the following instrument in writing :

PHELPS, *December* 19, 1866.
"Mr. C. J. HAYDEN:

" Sir.—There is a fair prospect that Mr. Richards could sell a few chamber suits, if he had them.    If you will let him have them, we will see that you receive pay for them as sold, or soon after.

" (Signed)    CRANE & NORTON,
"*Bankers and Brokers, Phelps, N. Y.*"

Richards was a retail dealer in furniture, at Phelps, and Hayden was engaged in the business of manufacturing furniture and selling it at wholesale, at Rochester.    Crane & Norton were bankers at Phelps, as the writing imports; and Norton, having been requested by Richards to sign the paper, subscribed the name of his firm thereto, without the knowledge of his partner.

On or about the 20th December, 1866, Richards presented the writing to Hayden, who, upon the faith thereof, as the referee finds, sold furniture to Richards, at different times, to the amount of about $435, in all.    The referee also finds, that of this amount, $308.75 was ordered by Richards at the time of the presentation of the writing, and was shipped to him, by railroad, at different times, from the 21st of December to and

Hayden v. Crane.

including the 9th of March, 1867, according to Richards' directions. The amount delivered or shipped to Richards, at the time of the presentation of the writing, was $147.75, and this included one chamber suit, at the price of forty dollars.

In order to present fully the views of the referee, it is material to state, that he also finds that, according to the practice or usage among dealers in furniture, country dealers sometimes purchased chamber suits, which were composed of a somewhat indefinite number of pieces of furniture for chamber use, arranged together, but more frequently they purchased chamber furniture, from which suits could be formed, and arranged them into suits, according to their own taste, or to meet the views and taste of their customers; that Richards fully understood this practice and usage, when he presented the writing to Hayden, and that among the furniture ordered by him, at that time, was one chamber suit, arranged as such in Hayden's store; and the residue of the order was for chamber furniture adapted to, and which could be arranged as chamber suits, by said Richards, in conformity to such practice and usage.

It also appeared by evidence uncontradicted, that Richards commenced buying furniture of Hayden, on credit, in the summer of 1862, and continued to do so, from time to time, till June, 1867; that his orders were always filled without objection; that before presenting the writing, he had paid up to within fifty dollars, or thereabouts, which balance he paid on the day when the writing was presented; that he procured and presented the guaranty of his own motion, and not at Hayden's request; that he continued in business till August, 1867, when he sold off all his furniture, being his stock in trade, and removed from the State; and that subsequently to the 20th December, 1867, and from time to time, he purchased furniture of Hayden, exclusive of that sold under the guaranty, and made payments to him, amounting to $805, which, as the referee finds, Hayden applied, as received, on the debts due from Richards, exclusive of the demand arising from the guaranty.

It does not appear that Norton had notice that the plaintiff was continuing to ship goods to Richards, on the faith of the guaranty, until after the latter stopped business and left the State.

As to the law of the case, the referee decided that Crane was not bound by the guaranty, and he directed that the complaint be dismissed as to him. He also decided that the instrument was not a continuing guaranty, and that Norton is not liable for distinct purchases made by Richards, subsequently to the presentation of the writing.

But he held that by a fair construction of the writing, Norton became liable for the furniture for the use of chambers, ordered by Richards at the time when he presented the guaranty, and delivered to him as above stated, and on that ground he directed a judgment against Norton for $308.75, the price of the furniture then ordered, with interest from the 1st September, 1867. To this ruling the defendant's counsel excepted.

The appeal raises two questions, therefore : First, whether Norton's guaranty extends to the several parcels of goods sent to Richards subsequently to the shipment that immediately followed the presentation of the guaranty; and secondly, whether it covers the miscellaneous articles of chamber furniture sold to Richards, which were not in " suits."

It is useful to recur, in the outset, to certain familiar but important rules of interpretation. The extent of the liability of a guarantor, as of every other surety, is to be determined according to his intention as expressed in his contract. In ascertaining his intent, the contract is, in most respects, subject to the same rules of construction and interpretation as every other contract, and among them, to the rule that any ambiguity is to be taken most strongly against the promisor. But this is true only in part. In some respects, the contract of a surety is to be construed strictly in favor of the promisor. His obligation is not to be extended to any other subject, to any other person, or to any other period of time, than is expressed, or necessarily included in it. Mr. Burge, who states

this latter rule in his commentaries on the law of suretyship, argues in support of it thus : "It was in the power of the person accepting the surety to have expressed, and it is his own fault if he has not expressly included the case to which he seeks to extend the liability of the surety." (Burge on suretyship, p. 40.) In the case of *Russell* v. *Clark's executors*, Chief Justice MARSHALL said : "The law will subject a man having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt. Words of doubtful import ought not, it is conceived, to receive that construction. It is the duty of the individual who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation he is about to assume." (7 Cranch, 69 ; S. C. 2 U. S. : Cond. R., 417, 423.) The rule is also sustained by the following cases, among many others that might be cited : *McClusky* v. *Cromwell* (1 Kern, 593, op. of ALLEN J., p. 598, and cases cited by him) ; *Rogers* v. *Warner* (8 John, 119).

This rule of interpretation, so well established, is applicable to the questions before us, since they relate exclusively to the extent of the subject of the contract. Did the guarantor intend to become liable for an indefinite time, or for any article beyond those specified in his undertaking.

The learned referee recognized the rule, and its applicability to the present case, to the extent of holding that the contract of Norton was not a continuing guaranty, and that it contemplated only a single sale.

But his ruling, that the defendant is liable for the several distinct parcels of furniture delivered to Richards, at different dates after he presented the guaranty, seems to subject the defendant, in a great degree, to the very liability that would have resulted from a continuing guaranty. The ruling assumes that a mere executory agreement for the sale of furniture to be delivered in the future, without any limitation as to the time, was within the meaning of the guaranty. Reading the words of the instrument, even according to their ordinary import,

and without construing them strictly in favor of the promisor, we cannot consider them as expressing, or clearly implying, that intention. To our apprehension, they indicate an intent on the part of the surety to become liable for a moderate amount of the class of furniture therein specified, to be then presently delivered, and nothing more. What other meaning can be drawn from the allusion to the "prospect," that Richards could sell "a few chamber suits" if he had them on hand, and from the special undertaking of the surety to see that the plaintiff should receive pay for them as "sold." Obviously, the prospect, or opportunity referred to was *then existing*, and it was of such a nature that it would probably be lost by delay. All that was wanting to secure it, was the early possession of the goods, to attain which, Norton was willing to undertake for Richards, trusting to be saved harmless, by the avails of the very sales which Richards would thus be enabled to make. In our opinion, the guaranty comtemplated not only a single sale by Hayden, but a sale accompanied, or speedily followed, by delivery. It did not intend a continuing order, for the future delivery of goods, from time to time, for an indefinite period, either at the pleasure of the purchaser, or the convenience of the vendor. It follows, that the defendant is not liable for the distinct parcels of goods delivered, as appears by the evidence, on, and after the seventh of January, 1867.

Is he liable for *all* the articles delivered on the 20th December, 1866, or only for the one chamber suit? He became liable for "chamber suits," in express words. What was meant by the term? All the witnesses agree, that there are such things as chamber suits; but, as the referee has found, they are not always composed of the same number of pieces of furniture, the arrangement of the various articles into suits depending much on the taste of dealers or their customers. In the present case, however, the matter is not left to a test so fluctuating and uncertain. The parties evidently had a definite idea of what constituted a chamber suit, and they have given a practical construction to the term by their acts. In the bill of particulars of the plaintiff's demand. furnished to the defend-

ant's attorney, in the progress of the suit, the first item stated, is one " oak chamber suit," at forty dollars. The plaintiff testified, at the trial, that the item included a bedstead, bureau, looking-glass, sink, towel-rack, stand and three chairs. The other articles in the bill, were not termed " suits." Norton testified, that he was frequently in Richards' wareroom, after the articles purchased in December were received, and he saw one oak chamber suit, and but one, although he saw other articles of furniture there; and Nelson testified, that Richards had but one chamber suit. This is very satisfactory evidence, that all parties understood the term " chamber suits " alike, and such understanding should control. According to it, only one " suit " was delivered to Richards in December. Although the other articles in the bill were such as are adapted to chamber use, and are used in making up suits, yet it does not appear that they embraced all the various articles needed to make a complete " chamber suit," as understood by the parties, or according to any understanding of that term, known to furniture dealers. Undoubtedly it is not material, that the various articles should have been arranged in suits when delivered; but it is necessary, in order to charge the defendant, that they should have been susceptible of such arrangement. Did Norton become liable for any isolated article, sold to Richards, merely because it could have been used in making up chamber suits? If the purchase had been of a lot of bedsteads, or of looking-glasses, and nothing else, would he have been bound by his guaranty? Effect should be given to the term " chamber suits," by which he limited his undertaking; but those words are rendered unmeaning, if he be held liable for miscellaneous articles of furniture, out of which it does not appear that even one chamber suit could have been made, by any possible arrangement. If, to render a guarantor liable, it is incumbent on those who claim the benefit of the guaranty to show that it has been strictly complied with, the plaintiff's claim for the miscellaneous articles cannot be maintained.

It follows, that the extent of the defendant's liability, is the value of the chamber suit, sold and delivered to Richards, at

the time when he presented the guaranty; to wit: forty dollars, with interest, from the 1st of September, 1867, the referee having found that Richards sold the property in August of that year.

The judgment should be reversed, and a new trial ordered, cost to abide event, unless the plaintiff will stipulate in ten days to reduce the recovery, to the sum above indicated in which case the judgment should be affirmed for that amount of damages, with liberty to the party, who will then be entitled to costs under the statute, to have his costs taxed and inserted in the judgment.

Ordered accordingly.